**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CINDY PHAM

Plaintiff

v.

IONIA COUNTY,

Defendant.

Case No.

Hon.

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

**COMPLAINT AND JURY DEMAND**

Plaintiff Cindy Pham, by and through her attorneys, Hurwitz Law PLLC, hereby states the following for her Complaint against Defendant Ionia County:

**INTRODUCTION**

1. Plaintiff Cindy Pham served the Ionia County Public Defender Office as a dedicated Assistant Public Defender, faithfully performing her duties for nearly a year despite lupus and other autoimmune conditions she has endured for approximately fourteen (14) years. On March 17, 2026, after consulting with Human Resources, Plaintiff submitted disability paperwork seeking short-term disability leave and requesting available leave protections, including under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Rather than engage in any interactive process, Chief Public Defender Walter J. Downes responded almost

immediately by accusing Plaintiff of "blindsiding" him, and just three days later terminated her employment on pretextual grounds that had never previously been raised, documented, or resulted in discipline.

2. Defendant terminated Plaintiff just two months before she would have reached her one-year anniversary and secured full FMLA eligibility. These facts establish unlawful disability discrimination, retaliation, and failure to accommodate in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101 *et seq.*, as well as unlawful interference with and retaliation for the exercise of rights under the FMLA.

**JURISDICTION AND PARTIES**

3. Plaintiff is an individual residing in the City of Lansing, County of Ingham, State of Michigan.

4. Defendant Ionia County is a governmental body established by the Michigan Legislature and located in Ionia County, Michigan.

5. At all relevant times, Defendant employed Plaintiff through the Ionia County Public Defender's Office.

6. The United States District Court for the Western District of Michigan has federal question jurisdiction over Plaintiff's claims under the ADA and FMLA pursuant to 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's claims under Michigan's PWDCRA pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

8. Venue is proposer pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial

district in which a substantial part of the events giving rise to Plaintiff's claims occurred.

9. Plaintiff timely filed an EEOC Charge of Discrimination on May 5, 2026 and received her "Right to Sue" Letter on August 5, 2026.

**FACTUAL ALLEGATIONS**

10. Plaintiff incorporates by reference the foregoing paragraphs.

11. Plaintiff's employment with Ionia County as an Assistant Public Defender began on May 22, 2025.

12. In her role as Assistant Public Defender, Plaintiff was responsible for representing indigent criminal defendants, attending court hearings, visiting incarcerated clients, managing a substantial case load, and ensuring compliance with Michigan Indigent Defense Commission ("MIDC") Standards.

13. For approximately fourteen (14) years, Plaintiff has struggled with various autoimmune diseases, including lupus. Plaintiff's symptoms are unpredictable, often flaring without warning and requiring immediate medical attention.

14. Despite her health challenges, Plaintiff demonstrated extraordinary commitment to her position and maintained her case load even while physically struggling. Prior to March 2026, Plaintiff never received any discipline.

15. Plaintiff made multiple efforts to communicate her medical struggles to Chief Public Defender Walter J. Downes, her direct supervisor. Plaintiff disclosed her autoimmune disease to Mr. Downes on at least three separate occasions, the first of which was on August 1, 2025, when Plaintiff forwarded to Mr. Downes and Human Resources specialist Priscilla Walden a letter from her physician, Dr. Cagnoli.

16. The letter stated in part:

> I am writing on behalf of my patient, Cindy Pham, who has a permanent disability that significantly impacts her daily activities. Due to her condition, she experiences limitations with prolonged standing, walking, sitting, and other physical tasks that require sustained effort. These restrictions affect her ability to perform certain job duties without appropriate accommodations.
>
> It is medically necessary for Ms. Pham to have light duty work accommodations in order to minimize strain and maintain her functional capacity. Reasonable accommodations should include, but are not limited to:
>
> - Avoiding prolonged standing, walking, or sitting without the opportunity to change position.
> - Limiting tasks that require repetitive or physically demanding activities.
> - Ensuring flexibility in her work environment to allow for position changes and rest as needed.
>
> These accommodations are intended to manage her disability and continue to contribute productively in the workplace. Given the permanent nature of her condition, these restrictions should be considered ongoing.
>
> Thank you for your attention and understanding in supporting Ms. Pham's health and work capacity. Please feel free to contact my office should you require additional medical information.

17. Plaintiff also specifically informed Mr. Downes that the commute from Lansing to Ionia was taking a significant toll on her health due to her medical condition. Rather than engaging in any meaningful discussion about potential accommodations, Mr. Downes merely asked whether Plaintiff had looked for a place to live closer to work and offered no other substantive response.

18. At no time did anyone at Ionia County initiate an interactive process to discuss reasonable accommodations for Plaintiff's medical condition.

19. On March 17, 2026, after consulting with Ms. Walden about the proper procedures, Plaintiff initiated the process of requesting disability leave. At 11:17 a.m., she emailed Ms.

Walden inquiring about the disability claim form and the steps necessary to facilitate her leave. Ms. Walden provided Plaintiff with the short-term disability claim form from the County's insurance carrier, Mutual of Omaha.

20. At 2:07 p.m. the same day, Plaintiff forwarded the disability form to Mr. Downes and Ms. Walden. In her email, Plaintiff stated in part:

> Walt,
>
> I am in need of your assistance. Section 2 of the attached form needs to be done when you are able. Once you are done, I will then print it out, sign, and submit the form.
>
> Section 2 has been facilitated by Priscilla's helpful assistance in this.
>
> I am currently under the care of a physician and will be providing the necessary medical documentation to support my leave. ***I would like to initiate any available leave protections, including FMLA, and apply for short-term disability benefits.*** Please let me know what you may need from me to ensure my leave and benefits are handled properly.
>
> Thanks for your assistance. I will do my best to support a smooth transition of responsibilities.

21. Throughout the afternoon of March 17, Plaintiff repeatedly sought clarification from Ms. Walden about when she could begin her leave, expressing fear that she would be terminated for not showing up to work without the proper authorization. Ms. Walden informed Plaintiff that "if you request FMLA, you have 12 weeks of consecutive time off (with your physician's certification), or 12 weeks of intermittent time off, and your job is protected . . . If you qualify for STD, you won't lose your job during that time."

22. Mr. Downes's immediate response to Plaintiff's disability request was hostile and retaliatory. Just hours after receiving Plaintiff's disability paperwork, Mr. Downes sent Plaintiff an email on March 17, 2026 at 5:04 p.m. stating "Wow – thanks for blindsiding me on this. When

does leave go into effect? When were you going to share this information, especially since we will need to reassign all of your cases?" Two minutes later, at 5:06 p.m., Mr. Downes sent Plaintiff another email criticizing the details of Plaintiff's disability form and questioning why Plaintiff had indicated that she spent 21% of her time on travel.

23. The next morning, on March 18, 2026, Mr. Downes sent Plaintiff an aggressive email stating:

> I have had no communication from you yet today. You did not appear in the office for work, and you did not call in sick. You were not approved for work remotely today. Are you considering yourself on STD status and not showing up for work? It is my understanding that STD is not approved until your physician completes the paperwork and it is approved by the insurance company. I would appreciate knowing your status today.

24. Plaintiff promptly responded:

> I was under the impression that I was on STD leave but I can continue working until I get more concrete confirmation on this issue. With that being said, I am remote today. My condition flares – meaning I do not control the disease including when it is triggered and I am trying my best. I already planned on going through all of my cases today to ensure notes were updated.

25. The same morning, after Plaintiff had already submitted her FMLA request and disability paperwork, Ms. Walden emailed Plaintiff "I just checked your date of hire. Since you have not been [here] a full year, you do not qualify for FMLA."

26. On the morning of Friday, March 20, 2026, Plaintiff sent Mr. Downes an email stating "I'm unable to be at work today due to medical reasons. Not sure if I need to continue updating."

27. The same day, on March 20, 2026, Mr. Downes sent Plaintiff an email with the subject line "NOTICE OF IMMEDIATE TERMINATION." The email stated in part:

> This is your notice of immediate termination of your employment as

> an Assistant Public Defender in our office . . . Last week you failed to report to work or communicate with me on your whereabouts, both on March 12 and March 13 . . . This week, you left work early on March 17 without notice to me. You then failed to come back to work on March 18 and March 19, without communication to me on your whereabouts and why you had not appeared for work on those dates.

28. Plaintiff's termination occurred just three days after Plaintiff submitted her disability paperwork on March 17, 2026, and just two months before her one-year work anniversary on May 22, 2026, when she would have qualified for FMLA protection. Defendant terminated Plaintiff despite never providing her with any formal warnings beforehand and without ever engaging in the interactive process.

29. The reasons offered for Plaintiff's termination are pretextual. Plaintiff had worked for Defendant for nearly ten months without any formal discipline and managed a heavy case load even while physically struggling. The timing of her termination, immediately upon her request for disability leave and leave protections, reveals that Defendant treated Plaintiff's protected medical request as disqualifying from continued employment.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

30. Plaintiff incorporates by reference the foregoing paragraphs.

31. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

32. Plaintiff has a "disability" within the meaning of 42 U.S.C. § 12102(1), because her lupus and autoimmune conditions are physical impairments that substantially limit one or more major life activities.

33. Defendant also regarded Plaintiff as having a disability under 42 U.S.C. § 12102(3)(A).

34. Plaintiff was otherwise qualified for her position as Assistant Public Defender, with or without a reasonable accommodation, and performed her duties without discipline for nearly ten months.

35. To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate that "(1) she has a disability; (2) she is otherwise qualified for the job, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) her employer knew or had reason to know of her disability; and (5) her position remained open, or she was replaced." *Withers v. Nashville Historic Cemetery Ass'n, LLC*, 729 F. Supp. 3d 802, 816 (M.D. Tenn. 2024), *aff'd*, No. 24-5460, 2025 WL 1455716 (6th Cir. May 21, 2025) (citing *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017)).

36. Defendant knew of Plaintiff's disability because she disclosed her condition on at least three separate occasions and submitted a physician's letter on October 21, 2025.

37. Defendant discriminated against Plaintiff on account of her actual or perceived disability when it terminated her employment on March 20, 2026, just three days after she submitted her disability paperwork.

38. Defendant made its decision based on speculative assumptions about Plaintiff's limitations stemming from her disclosure of lupus and her request for leave, rather than any legitimate assessment of Plaintiff's duties

39. Defendant's actions were knowing and willful.

40. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical

effects associated therewith, and will so suffer in the future, as a direct and proximate result of Defendant's violation of the ADA.

41. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of Defendant's violation of the ADA.

**COUNT II**
**RETALIATION IN VIOLATION OF THE ADA**

42. Plaintiff incorporates by reference the foregoing paragraphs.

43. The ADA prohibits an employer from discriminating against any individual because that individual "has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

44. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

45. Plaintiff engaged in protected activity when she requested reasonable accommodation for her disability and sought disability leave.

46. Defendant knew of Plaintiff's protected activity because she submitted her request for accommodation and leave directly to her supervisor and to Defendant's Human Resources department.

47. A causal connection exists between Plaintiff's protected activity and her termination. Defendant terminated Plaintiff just three days after she submitted her disability paperwork, and Mr. Downes's immediate hostile reaction of "blindsiding" him, provides direct evidence of discriminatory animus.

48. Defendant's actions were knowing and willful.

49. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of Defendant's violation of the ADA.

50. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of Defendant's violation of the ADA.

**COUNT III**
**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

51. Plaintiff incorporates by reference the foregoing paragraphs.

52. Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business or such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

53. To establish a *prima facie* failure to accommodate case under the ADA, a plaintiff must demonstrate that "(1) she is disabled under the ADA; (2) she is otherwise qualified for the

position, with or without a reasonable accommodation; (3) her employer knew or had reason to know of her disability; (4) she requested a reasonable accommodation; and (5) the employer failed to make the reasonable accommodation." *Withers v. Nashville Historic Cemetery Ass'n, LLC*, 729 F. Supp. 3d 802, 814 (M.D. Tenn. 2024), *aff'd*, No. 24-5460, 2025 WL 1455716 (6th Cir. May 21, 2025) (citing *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015)).

54. Here, Plaintiff requested reasonable accommodations for her disability, including through the physician's letter she submitted and through her request for disability leave.

55. Defendant knew or had reason to know of Plaintiff's disability and her need for accommodation.

56. Defendant failed to engage in any interactive process and failed to provide Plaintiff with reasonable accommodations.

57. Defendant was legally required to engage in the interactive process and to provide reasonable accommodation before terminating Plaintiff.

58. Defendant's actions were knowing and willful.

59. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of Defendant's violation of the ADA.

60. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of Defendant's violation of the ADA

**COUNT IV**
**RETALIATION IN VIOLATION OF THE FMLA**

61. Plaintiff incorporates by reference the foregoing paragraphs.

62. Under 29 U.S.C. § 2615(a)(2), it "shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2).

63. To establish a *prima facie* case of FMLA retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) her employer knew she engaged in protected activity; (3) her employer took an adverse employment action against her; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Paris v. MacAllister Mach. Co., Inc.*, 175 F.4th 787, 797 (6th Cir. 2026).

64. Here, Plaintiff engaged in protected activity when she requested FMLA protections through Defendant's Human Resources department and submitted the required documentation. On March 17, 2026, Plaintiff emailed Mr. Downes and Ms. Walden stating "I would like to initiate any available leave protections, including FMLA, and apply for short-term disability benefits. Please let me know what you may need from me to ensure my leave and benefits are handled properly."

65. That Plaintiff had not yet completed one full year of employment does not defeat her FMLA retaliation claim. "[T]he scope of protected activity under the FMLA starts with the first step contemplated under the Act's procedures: a request made to the employer. ***That request, moreover, need not lead to entitlement in order to be protected.***" *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 871 (6th Cir. 2023).

66. Defendant knew that Plaintiff was seeking to exercise FMLA rights.

67. Defendant took adverse employment action against Plaintiff when it terminated her

employment on March 20, 2026.

68. A causal connection exists between Plaintiff's protected activity and her termination.

69. Defendant's proffered reasons for Plaintiff's termination are pretextual. Plaintiff was retaliated against for seeking to exercise FMLA rights.

70. Defendant's actions were knowing and willful.

71. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of Defendant's violation of the FMLA.

72. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of Defendant's violation of the FMLA.

**COUNT V**
**INTERFERENCE IN VIOLATION OF THE FMLA**

73. Plaintiff incorporates by reference herein the foregoing paragraphs.

74. Under 29 U.S.C. § 2615(a)(1), it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).

75. To establish a *prima facie* case of FMLA interference, a plaintiff must demonstrate that "(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the

employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Moore v. Bells Nursing Home, Inc.*, 812 F. Supp. 3d 804, 816 (W.D. Tenn. 2024) (quoting *Hrdlicka*, 63 F.4th at 572)).

76. Plaintiff's lupus and autoimmune conditions constitute serious health conditions under the FMLA.

77. Plaintiff gave Defendant notice of her intention to take leave when she submitted her disability paperwork and requested FMLA leave.

78. By terminating Plaintiff immediately upon her request for leave, and just two months before she would have secured full FMLA eligibility, Defendant interfered with Plaintiff's ability to exercise her rights under the FMLA.

79. Defendant's actions were knowing and willful.

80. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of Defendant's violation of the FMLA.

81. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of Defendant's violation.

**COUNT VI**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE PWDCRA**

82. Plaintiff incorporates by reference the foregoing paragraphs.

83. Under the PWDCRA, "a person shall accommodate a person with a disability for purposes of employment . . . unless the person demonstrates that the accommodation would impose

an undue hardship." MCL § 37.1102(2).

84. Plaintiff has a disability within the meaning of MCL § 37.1103(d).

85. Plaintiff was regarded as having a disability under MCL § 37.1103(d)(iii).

86. Plaintiff was qualified to perform the essential functions of her position.

87. Plaintiff requested reasonable accommodations.

88. Defendant failed to engage Plaintiff in the required interactive process to identify and implement reasonable accommodations despite Plaintiff's disclosures and requests for accommodation.

89. Defendant was legally required to engage in the interactive process before terminating Plaintiff.

90. Defendant discriminated against Plaintiff on account of her actual and perceived disabilities when Defendant terminated Plaintiff.

91. The termination was causally connected to Plaintiff's disability.

92. Defendant's proffered reasons for terminating Plaintiff were pretextual.

93. Defendant's actions were knowing and willful.

94. As a direct and proximate result of Defendant's violations, Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, depression, loss of reputation, humiliation, financial distress, loss of earnings and benefits, impairment of her earning capacity, and has been required to employ the services of an attorney to bring this lawsuit.

**COUNT VII**
**RETALIATION IN VIOLATION OF THE PWDCRA**

95. Plaintiff incorporates by reference the foregoing paragraphs.

96. Plaintiff has a disability within the meaning of MCL § 37.1103(d).

97. Plaintiff was regarded as having a disability under MCL § 37.1103(d)(iii).

98. Defendant had knowledge of Plaintiff's disability and her requests for accommodation.

99. Defendant took adverse employment action against Plaintiff when Defendant terminated Plaintiff.

100. A causal connection exists between the protected activity and the adverse action, demonstrated by temporal proximity between Plaintiff's accommodation request and subsequent termination.

101. Defendant's proffered reason for terminating Plaintiff was pretextual.

102. Defendant's retaliatory conduct was knowing and willful.

103. As a direct and proximate result of Defendant's violations, Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, depression, loss of reputation, humiliation, financial distress, loss of earnings and benefits, impairment of her earning capacity, and has been required to employ the services of an attorney to bring this lawsuit.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

a. Judgement against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorneys' fees under the FMLA, PWDCRA, and ADA;

b. Interest; and

c. Such other relief as in law or equity may pertain.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)

Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

Dated: August 28, 2026

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CINDY PHAM

Case No.

Plaintiff

Hon.

v.

IONIA COUNTY,

Defendant.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

---

**DEMAND FOR TRIAL BY JURY**

Plaintiff Cindy Pham, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial in the above-captioned matter for all issues so triable.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

Dated: August 28, 2026